O’MALLEY, Circuit Judge,
coneurringin-part, dissenting-in-part.
I agree that Cree, Inc. (“Cree”) reduced its invention to practice before Fox Group, Inc. (“Fox”) did so. Although my reasons for reaching this conclusion differ somewhat from those articulated by the majority, I agree that, in 1995, Cree grew a silicon carbide (“SiC”) material that met uniquely low defect density thresholds and appreciated the qualities the material possessed. These facts are sufficient, in my view, to establish Cree’s prior reduction to practice.[1] Despite this threshold agreement with the majority’s reasoning, however, I dissent from the judgment the majority enters; I do not agree that the record supports the conclusion that, as a matter of law, Cree neither abandoned, suppressed, nor concealed its invention within the meaning of § 102(g).
One is entitled to a patent unless, “before such person’s invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.” 35 U.S.C. § 102(g)(2). Although there is “no explicit disclosure requirement in § 102(g),” we have held that “the spirit and policy of the patent laws encourage an inventor to take steps to ensure that ‘the public has gained knowledge of the invention which will insure its preservation in the public domain’ or else run the risk of being dominated by the patent of another.” Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1038 (Fed. Cir.2001) (quoting Palmer v. Dudzik, 481 F.2d 1377, 1387 (C.C.P.A.1973)). As the majority explains, once prior invention is established by clear and convincing evidence, “the burden of production shifts to the patentee to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor abandoned, suppressed, or concealed the invention.” Dow Chem. Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1339 (Fed.Cir.2001) (citing Apotex, 254 F.3d at 1037). If the patentee meets this burden of production, “the challenger may rebut the evidence of abandonment, suppression, or concealment, with clear and convincing evidence to the contrary.” Id. (citing Apotex, 254 F.3d at 1037-38).
Because I agree that Cree established prior invention by clear and convincing evidence, the relevant questions are: (1) whether Fox produced evidence sufficient to create a genuine issue that Cree nonetheless ■ abandoned, suppressed, or concealed that invention, and, if so, (2) whether Cree rebutted Fox’s evidence of abandonment, suppression, or concealment with clear and convincing evidence. The majority agrees with the district court that Fox failed to present any evidence that Cree abandoned, suppressed, or concealed the invention. I disagree. As discussed below, summary judgment was inappropriate because: (1) Fox presented evidence of both direct and inferential abandonment, suppression, or concealment; and (2) Cree’s written publication — a 1996 article entitled “Recent progress in SiC crystal growth,” which was published in the Kyoto Conference journal (“the Kyoto Article”) — was insufficient standing alone to rebut Fox’s evidence.
*1310 I. Fox Presented Evidence of Abandonment, Suppression, or Concealment
It is well-established that there are two types of abandonment, suppression, or concealment. The first is where the inventor deliberately suppresses or conceals his invention from the public. Fujikawa v. Wattanasin, 93 F.3d 1559, 1567 (Fed.Cir. 1996). The second type occurs when abandonment, suppression, or concealment “may be inferred based upon the prior inventor’s unreasonable delay in making the invention publicly known.” Dow Chem., 267 F.3d at 1342 (citation omitted). This court has said that the “failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention may constitute abandonment, suppression, or concealment.” Id. (internal citations omitted).
On appeal, Fox argues that it submitted sufficient evidence to satisfy its burden of production as to both intentional and inferential abandonment, suppression, and concealment. The majority disagrees and accepts the district court’s conclusion that Fox sought only to show an inference of abandonment, suppression, or concealment based on unreasonable delay. See Fox Group, Inc. v. Cree, Inc., 819 F.Supp.2d 524, 535 (E.D.Va.2011) (“Fox does not offer evidence, let alone contend that Cree ‘intentionally delayed [disclosure] in order to prolong the period during which the invention is maintained in secret.’ ”) (citation omitted).
As Fox’s supplemental briefing to the district court reveals, however, Fox did not limit its arguments to inferential abandonment. Instead, Fox argued broadly that Cree had a policy of concealing its production methods and that this policy, “in conjunction with Cree’s choice not to reveal the subject matter of the invention in its [Kyoto Article] and not to enable its competitors how to make it, establish that Cree suppressed or concealed the invention.” J.A. 4170. In support of this position, Fox pointed to deposition testimony from one of Cree’s inventors — Dr. Calvin Carter — regarding the company’s policy to exclude all details as to how to replicate discoveries in any publications regarding them. Fox further argued that, even if Cree made and appreciated its invention in 1995, it delayed nine years, until 2004, before commercializing anything that resembled the Kyoto wafer. In other words, Fox argued both that Cree: (1) “made a choice not to disclose the subject matter of the invention or enable the public how to make it”; and (2) unreasonably delayed placing the invention in the public domain. J.A. 4173-74. Given these distinct assertions, although the district court interpreted Fox’s arguments to relate solely to the second type of proof, Fox presented evidence sufficient to encompass both intentional and inferential abandonment, suppression, or concealment.
Fox presented direct evidence that Cree: (1) deliberately concealed its production methods; (2) did not file a patent application relating to the low-defect SiC wafer it created (“the Kyoto wafer”); and (3) failed to publicly use or commercialize the Kyoto wafer in a manner that would have allowed reverse-engineering. With respect to abandonment, Fox argued that Cree had no proof that the process it used to create the Kyoto wafer was ever used again, or that Cree even understood what that process was. Specifically, Fox pointed to deposition testimony which, according to Fox, revealed that “Cree did not pursue further crystal growth using the same recipe and reactor in an attempt to reproduce the G0259-03 crystal.” J.A. 4170. This evidence, taken as a whole, is *1311 sufficient to create a genuine issue that Cree abandoned, suppressed, or concealed its invention, particularly since the standard for summary judgment requires that it be viewed in the light most favorable to Fox.
II. Cree Failed to Rebut Fox’s Evidence of Abandonment, Suppression, or Concealment
Because Fox presented evidence creating genuine issues of material fact as to abandonment, suppression, or concealment, the burden shifted to Cree to rebut that showing with clear and convincing evidence. A first inventor can avoid a determination of abandonment, suppression, or concealment by showing that “he or she marketed or sold a commercial embodiment of the invention or described the invention in a publicly disseminated document.” Checkpoint Sys., Inc. v. Int’l Trade Comm’n, 54 F.3d 756, 762 (Fed.Cir.1995).
Here, Cree’s only rebuttal argument was that it disclosed the Kyoto wafer, together with an x-ray topograph and a description of its low-defect nature, at the Kyoto Presentation and in the subsequent Kyoto Article. Based on this evidence alone, the district court found that it could not draw an inference of abandonment, suppression, or concealment. Fox Group, 819 F.Supp.2d at 536 (“[Tjhere is no genuine issue that Cree contemporaneously disclosed its invention in a presentation and paper at the 1995 International Confererme, and that said paper was subsequently published.”). Because it publicly disclosed the fact of the invention, albeit in limited fashion, the district court found “that Cree did not delay in ‘bringing knowledge of the invention to the public’ ” and that it was “of no moment that Cree did not market its public invention in its commercial products for nine years.” Id. In short, the district court, and now the majority here, find that the same evidence which established Cree’s prior reduction to practice was sufficient to prohibit a finding of abandonment, suppression, or concealment.
Fox relies on Apotex for the proposition that Cree’s failure to either explain to the public how to make its invention or to provide the public with some mechanism for making that determination on its own constitutes concealment.[2] In Apotex, which involved a claimed process of manufacturing high blood pressure tablets, the court found that the prior inventor “took no steps to make the invention publicly known for nearly five years,” and that this delay gave rise to an inference that it suppressed or concealed its invention. 254 F.3d at 1039. The court concluded, however, that the prior inventor successfully rebutted this inference by, among other things, selling the tablets commercially, disclosing the ingredients used to manufacture the tablets in a publication, and providing a step-by-step description of the process through testimony at a Canadian *1312 trial. Id. at 1040. In reaching this conclusion, we noted that, if it were clear that the process “could be reverse-engineered by one of ordinary skill through an inspection” of the product, the patentee “could not benefit from the inference of suppression or concealment because [the prior inventor] could not be said to have delayed in making the benefits of its invention known to the public.” Id. at 1039, n. 3 (citation omitted).
While citing to it in passing, the majority completely ignores Apotex, failing to address either its policy concerns or the analysis employed. It is difficult to ignore the fact, however, that Apotex makes clear that a prior inventor must show that the public was clearly given the benefit of an invention, via reverse-engineering, a detailed disclosure, or otherwise, if it wants to rely on § 102(g) to invalidate a patent. Despite the majority’s finding to the contrary, simply disclosing the existence of the product, without more, is insufficient to make an invention publicly known. There must be something more.
For example, in Dow Chemical, this court found that commercialization of a product was sufficient to rebut a charge of abandonment, suppression, or concealment. In Dow, the invention related to plastic foam products. There, a prior inventor, AVI, publicly disclosed its invention of the foam product to the public through commercialization. 267 F.3d at 1343. The patentee argued that AVI had abandoned, suppressed, or concealed its prior invention by delaying public disclosure. Although this court agreed that “unreasonable delay in bringing knowledge of the invention to the public may raise an inference of suppression or concealment,” it found that there was no such delay because AVI took reasonable steps towards commercialization after its initial discovery. Id. at 1342-43. Specifically, we found that, “during the 30 months between first making the isobutane-blown foam and selling the foam, AVI actively and continuously took steps towards the commercialization ... including the procurement of financing to build a new production plant and the attention to safety considerations associated with using isobutane as a blowing agent.” Id. at 1343. Because the undisputed evidence showed that AVI made reasonable efforts to bring the invention to the public, the court concluded that Dow did not show suppression or concealment.
Cree cites Dow for the proposition that, where the claimed invention is a product, the prior inventor need only disclose the product itself to rebut abandonment, suppression, or concealment — it need not disclose the process used to make it; indeed, it need not even understand the process used to make it. According to Cree, Dow supports its position because the process for making the foam was never disclosed. The fact remains, however, that in Dow, there was clear evidence that the product was made publicly available through commercialization.
The majority does not discuss Dow in any detail, perhaps recognizing that it is distinguishable from the instant case where Cree has not, at this stage, shown any evidence of commercialization before 2004.[3] And, unlike in Dow, there is no evidence in the record as to steps Cree *1313 took to commercialize its product during the nine year period following invention. Instead, the evidence at this stage establishes only that the Cree inventors gave a presentation and published a non-enabling article. Although Cree alleges that it continued its research efforts to further improve its SiC material, there is no supporting evidence of that fact in the record.
Neither Cree nor the majority point to any case law where § 102(g) was used to invalidate a patent even though the prior inventor did not commercialize the product, make it available to the public so that reverse-engineering was possible, or provide some other detailed disclosure giving the public the benefit of the invention. Although the eases on which Fox relies for its enablement requirement do involve process claims — not a product claim as we have here — there are no cases before now where we have said that a non-enabling disclosure, by itself, is sufficient to rebut evidence of abandonment, suppression, or concealment.
Because Cree made the fact of its invention known to the public, the majority, like the district court before it, concludes that Fox can never establish abandonment, suppression, or concealment. Under the majority’s approach, an inventor could publicly announce that it made a product, with no explanation as to how it did so, and then hide it away in a closet indefinitely. As long as the inventor describes a product in general terms, the inventor cannot, according to the majority, be accused of abandoning, suppressing, or concealing the invention.
The majority’s approach cannot be the law. If a prior inventor could disclose the mere existence of a product and take no further action for nine years, the concept of abandonment, suppression, or concealment would be rendered meaningless. Consistent with our prior case law, where there is no enabling written disclosure, there must be evidence that the prior inventor timely made its invention available to the public in some other way — e.g., through public use, commercialization, or filing a patent application claiming the invention. Such a requirement is consistent with § 102(g)’s general goal of giving the public the benefit of the invention. See Checkpoint, 54 F.3d at 761 (Section 102(g) “encourages prompt public disclosure of an invention by penalizing the unexcused delay or failure of a first inventor to share the ‘benefit of the knowledge of [the] invention’ with the public after the invention has been completed.” (citation omitted)).
Here, the record is devoid of any rebuttal evidence beyond the Kyoto Article, which did little more than proclaim that Cree “recently had a breakthrough that has dramatically reduced” micropipe density. J.A. 2127. The Article included an x-ray topograph and stated that one wafer contained “a total of 25 micropipes, yielding a density of 3.5 cm"2” while some other wafers had a “total line defect density of about 1000 cm"2.” Id. The Kyoto Article did not refer to the three defect densities claimed in the '130 Patent and did not reveal Cree’s “experimental methods” or its “specific crystal growth conditions.” Appellant Br. 14. These deficiencies, coupled with evidence that Cree intentionally did not tell the public how to make the wafer it described, was not able to repeat its invention, and did not engage in commercialization of the wafer for nine years, support Fox’s position that Cree abandoned, suppressed, or concealed its invention.
By relying solely on the Kyoto Article, Cree has not, as of yet, satisfied its burden of rebutting Fox’s evidence. Because there are underlying facts that are both material and genuinely disputed, and because the district court erred in resolving those disputes in favor of the moving par *1314 ty, I would remand this case for further factual development on the question of whether Cree abandoned, suppressed, or concealed its invention within the meaning of § 102(g).
III. Conclusion
For the foregoing reasons, although I agree with the majority that Cree established prior inventorship, I believe there are genuine issues of material fact precluding summary judgment in Cree’s favor under § 102(g). Accordingly, I must respectfully dissent from the judgment the majority reaches. I would reverse and remand for trial.

. I also agree that, because Cree only sought judgment declaring claims 1 and 19 of U.S. Patent No. 6,562,130 ("the '130 Patent”) invalid under 35 U.S.C. § 102(g), the district court erred in holding the entire patent invalid. Indeed, the correctness of that proposition is so clear as to need no further comment.

. Specifically, Fox emphasizes language in Apotex where this court discussed the policy in favor of public disclosure of inventions:
[T]he spirit and policy of the patent laws encourage an inventor to take steps to ensure that "the public has gained knowledge of the invention which will insure its preservation in the public domain” or else run the risk of being dominated by the patent of another. Palmer v. Dudzik, 481 F.2d 1377, 1387 (C.C.P.A.1973).... Absent a satisfactory explanation for the delay or the presence of other mitigating facts, a prior invention will therefore be deemed suppressed or concealed within the meaning of § 102(g) "if, within a reasonable time after completion, no steps are taken to make the invention publicly known.” [Int'l Glass Co., Inc. v. United States, 408 F.2d 395, 403 (Ct.Cl. 1969)].
Apotex, 254 F.3d at 1038-39.

. When asked at oral argument whether Cree conceded that it took nine years for commercialization, counsel responded: "I don’t concede that in this record. In this record we did not pursue a commercialization path to show that there wasn’t abandonment, suppression, or concealment.” Oral Argument at 27:47, available at http://www.cafc.uscourts. gov/oral-argument-recordings/2011-1576/all. At this stage of the proceedings, therefore, it is undisputed that the record is devoid of any evidence of commercialization prior to 2004.