Opinion for the court filed by Circuit Judge WALLACH.
Opinion concurring-in-part, dissenting-in-part filed by Circuit Judge O’MALLEY.
WALLACH, Circuit Judge.
The Fox Group, Inc. (“Fox”) appeals from the decision of the United States District Court for the Eastern District of Virginia granting Cree, Inc.’s (“Cree”) motion for summary judgment of invalidity of U.S. Patent No. 6,562,130 (filed May 4, 2001) (“the '130 patent”). Fox Group, Inc. v. Cree, Inc., 819 F.Supp.2d 524, 537 (E.D.Va.2011). We find that the district court did not err in granting summary judgment in Cree’s favor based upon the invalidity of claims 1 and 19 of the '130 patent under 35 U.S.C. § 102(g). However, because there was no case or controversy at the time of the judgment over the remaining claims of the '130 patent (“unasserted claims”), the district court erred in holding the unasserted claims of the '130 *1302 patent invalid. Accordingly, we affirm-in-part and vacate-in-part.
Background
Fox is the assignee of the '130 patent, entitled Low Defect Axially Grown Single Crystal Silicon Carbide, which claims a low defect silicon carbide (“SiC”) crystal and relates to a method and apparatus of said crystal. '130 patent col. 3 ll. 15-27. The '130 patent claims priority from application No. PCT/RU97/00005, filed on January 22, 1997. Id. at col. 1 ll. 6-10. “SiC crystal is a semiconductor material grown via man-made methods and used in high-temperature and high-power electronics such as light sources, power diodes, and photodiodes. To be viable as a semiconductor, SiC material must contain a relatively low level of defects.” Fox Group, 819 F.Supp.2d at 526-27.
Fox argues that Cree infringes claims 1 and 19 of the '130 patent. Claim 1 recites:
A silicon carbide material comprising an axial region of re-crystallized single crystal silicon carbide with a density of dislocations of less than 10[4] per square centimeter, a density of micropipes of less than 10 per square centimeter, and a density of secondary phase inclusions of less than 10 per cubic centimeter.
'130 patent col. 8 ll. 6-11. Claim 19 is very similar, but requires a seed crystal and requires a region of axially recrystallized silicon carbide initiated at the growth surface of the seed crystal. Id. at col. 9 1. 37-col. 10 1. 6. Claim 19 states:
A silicon carbide material, comprising:
a single crystal silicon carbide seed crystal, said single crystal silicon carbide seed crystal having a growth surface; and
a region of axially re-crystallized silicon carbide, said region of axially re-crystallized silicon carbide initiating at said growth surface of said single crystal silicon carbide seed crystal, said region of axially re-crystallized silicon carbide having a density of dislocations of less than 10[4] per square centimeter, a density of micropipes of less than 10 per square centimeter, and a density of secondary phase inclusions of less than 10 per cubic centimeter.

Id.

Cree has engaged in research to grow low defect SiC crystals since its founding in 1987. In February 1995, as part of its research program, Cree grew boule G0259 and sent Dr. Michael Dudley, of the State University of New York at Stony Brook, a wafer sliced from that boule, wafer G02593 (the “Kyoto Wafer”), for X-ray topography analysis. After the initial analysis, Cree asked Dr. Dudley to do more analysis “to see if there are more lc dislocations in areas with no micropipes than in areas with micropipes.” JA2121. Dr. Dudley advised Cree that there was an exceptionally low defect area in the Kyoto Wafer.
At the 1995 International Conference on SiC and Related Materials (the “Kyoto Presentation”). Dr. Calvin Carter, one of the Cree inventors, showed a cropped image and described the low defect nature of the Kyoto Wafer, stating that it had an area with less than 1,000 dislocations per square centimeter, and no micropipes. In an article published in 1996 (“1996 Article”), entitled “Recent progress in SiC crystal growth,” Cree described the Kyoto Wafer. JA2129. The 1996 Article disclosed that Cree had “recently had a breakthrough that ... dramatically reduced” micropipe density. JA2127. The article included an image of the X-ray topograph generated during Dr. Dudley’s analysis, showing the high quality SiC that Cree had grown. The caption explained that the image was of a “14 x 4.5 mm area *1303 of a 4H-SÍC wafer. Excluding the portions with dislocation tangles, this area has a total line defect density of about 1000 cm'2.” Id.
In 2007, Dr. Dudley analyzed a wafer from Cree at Fox’s request. In April 2011, Dr. Dudley reviewed the 1995 X-ray topographs of the Kyoto Wafer and determined that a region of the wafer had an average dislocation density of less than 10[4] per square centimeters, no micropipes, and no secondary phase inclusion.
Fox originally brought suit against Cree on June 29, 2010.[1] In its Complaint, Fox sought injunctive relief as well as compensatory damages against Cree for infringing the '130 patent and U.S. Patent No. 6,534,-026 (“the '026 patent”).[2] In its Answer, Cree filed counterclaims seeking declarations that the '026 and '130 patents are not infringed, invalid, and unenforceable. Cree filed a motion for summary judgment of invalidity on April 11, 2011.
On June 10, 2011, the court issued its claim construction opinion construing terms in both the '130 patent and the '026 patent. On July 20, 2011, in response to a motion from Fox, the district court entered a judgment of noninfringement of the '026 patent for Cree and dismissed Cree’s counterclaims related to the '026 patent. The court then denied Cree’s motion for summary judgment of noninfringement of the '026 patent as moot and considered only whether there was any genuine issue of material fact concerning the validity and infringement of the '130 patent.
On August 8, 2011, the district court granted Cree’s motion for summary judgment on its counterclaim seeking a declaration that the '130 patent is invalid, and dismissed or denied the other claims and counterclaims on infringement and unenforceability as moot. Id. at 537. Fox timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
Discussion
Fox’s challenge to the district court’s grant of summary judgment of invalidity is premised on the notion that Cree is not a prior inventor of the low defect wafer claimed by Fox, or, if it was, that Cree abandoned, suppressed, or concealed the invention. Fox also argues that the district court erred in entering an order invalidating the entire '130 patent, when only claims 1 and 19 were asserted. We address each in turn.
“This court reviews the district court’s grant or denial of summary judgment under the law of the regional circuit.” Lexion Med., LLC v. Northgate Techs., Inc., 641 F.3d 1352, 1358 (Fed.Cir.2011). The Fourth Circuit reviews the grant of summary judgment de novo. Nader v. Blair, 549 F.3d 953, 958 (4th Cir.2008). Summary judgment is appropriate when there is “no genuine issue of material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). It is the moving party’s burden to show it is entitled to judgment as a matter of law, and the non-moving party’s burden to “demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.” Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994) (citation omitted). In evaluating *1304 a motion for summary judgment, we view all evidence and draw all reasonable inferences from the evidence in a light most favorable to the non-moving party. Nader, 549 F.3d at 958. “Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no ‘genuine issue for trial.’ ” Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting First Nat’l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).
An issued patent is presumed valid. 35 U.S.C. § 282. “[I]f a patentee’s invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention, [35 U.S.C. § 102(g)] will invalidate that patent.” Apotex USA, Inc. v. Merck & Co., Inc., 254 F.3d 1031, 1035 (Fed.Cir.2001). Under § 102(g), on a motion for summary judgment, a challenger of a patent must prove “by clear and convincing evidence that ‘the invention was made in this country by another inventor.’ ” Id. at 1037 (quoting 35 U.S.C. § 102(g)). Then, the burden shifts “to the patentee to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor has suppressed or concealed the invention.” Id. Finally, the burden shifts again to the challenger who “must rebut any alleged suppression or concealment with clear and convincing evidence to the contrary.” Id. at 1038.
I. Inventorship
Under § 102(g) a patent may be invalidated if “the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.” 35 U.S.C. § 102(g). This section “operates to ensure that a patent is awarded only to the ‘first’ inventor in law.” Apotex, 254 F.3d at 1035. “[A] challenger ... has two ways to prove that it was the prior inventor: (1) it reduced its invention to practice first ... or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice.” Mycogen Plant Sci., Inc. v. Monsanto Co., 243 F.3d 1316, 1332 (Fed.Cir.2001).
Fox argues that Cree failed to prove that it invented a process for making low defect SiC wafers because it did not provide proof that it did, or could, duplicate the process used to make the Kyoto Wafer. Fox avers that “[ijmplicit in the ‘conception’ requirement of inventorship is that the inventor must have conceived of something definite enough to be repeated, and that this conception is actually repeatable by those skilled in the art without undue experimentation.” Fox’s Opening Br. 41.
However, Cree needs only prove either that it reduced its invention to practice first or that it conceived of the invention first and was diligent in reducing it to practice. Mycogen, 243 F.3d at 1332. An alleged prior inventor would need to prove conception only if the alleged prior inventor had not successfully reduced the invention to practice before the critical date of the patent-at-issue (May 4, 2000).[3] Since Cree reduced the invention to practice in 1995, Fox Group, 819 F.Supp.2d at 532, it *1305 does not need to prove conception. Reduction to practice and conception are separate and distinct concepts and tests; we will not combine them.
The test for establishing reduction to practice requires that “the prior inventor must have (1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention would work for its intended purpose.” Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP & IPR Pharms., Inc., 661 F.3d 1378, 1383 (Fed. Cir.2011). Cree met both prongs to establish reduction to practice. It developed the Kyoto Wafer, a SiC wafer that met all three defect density limitations of claims 1 and 19 of the 130 patent. Fox Group, 819 F.Supp.2d at 532. Fox does not dispute that in 1995 Cree grew the Kyoto Wafer, which met all three of the defect density limitations of claims 1 and 19 of the 130 patent. Cree presented the results at the Kyoto Conference, describing the defect reduction achieved as a “breakthrough.” Id. at 534.
Fox argues that the district court “improperly focused on a generalized purpose of making ‘low defect’ SiC, rather than on the claimed purpose of making SiC wafers that met three specific, measurable, and repeatable defect densities.” Fox’s Opening Br. 46. However, case law shows that the prior inventor does not need to “establish that he recognized the invention in the same terms as those recited” in the patent claims. Dow Chem. Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1341 (Fed.Cir.2001).
Fox argues that Cree failed to prove it had reduced the invention to practice before 1997. Fox contends that Cree admitted it had not invented a repeatable process, quoting the 1996 article, which states “we are working on process repeatability issues that will result in consistent production of wafers of equal or better quality.” JA2127. However, Fox does not support its contention that Cree must prove repeatability to prove it had reduced the invention to practice. Furthermore, considering Cree’s statement within the context of the article, Cree never said that it could not make another SiC boule that met the claim limitations of the '130 patent. Rather, Cree was describing the Kyoto Wafer which had very low micropipe density and describing plans to continue to reduce defects and grow even better quality wafers in the future. Cree proved that it had reduced the invention to practice; there is no requirement for it to have done so repeatedly, and therefore no genuine issue of material fact exists as to this issue.
“Cree appreciated in 1995 that its newly grown SiC material met uniquely low defect density thresholds, and said appreciation was based on ‘objective evidence [that] corroborate^]’ Cree’s public comments concerning that quality.” Fox Group, 819 F.Supp.2d at 534 (quoting Invitrogen, 429 F.3d at 1065) (brackets in original). There is no genuine issue whether Cree reduced the invention to practice prior to Fox’s critical date.
II. Abandonment, Suppression, or Concealment
There were two ways for Fox to produce evidence sufficient to create a genuine issue of material fact of abandonment, suppression, or concealment. Dow, 267 F.3d at 1342. The first way, that the prior inventor actively and intentionally suppressed or concealed, has not been raised before this court. Id. Rather, Fox disputes the sufficiency of Cree’s public disclosures, contending that abandonment, suppression, or concealment may be inferred from the inventor’s “unreasonable delay in making the invention publicly known.” Id.
*1306 There are numerous ways to support an inference of abandonment, suppression, or concealment, such as “[t]he failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention.... ” Id. (citations omitted). Fox cites to the testimony of one of the Cree inventors, Dr. Calvin Carter, stating that a certain amount of nondisclosure was company policy. Fox argues that since Cree (1) did not file a patent application for its Kyoto Wafer, (2) did not present proof of commercialization that would allow for reverse-engineering, and (3) did not otherwise provide adequate disclosure because it failed to reveal the details of the growth conditions under which boule G0259 was made, Cree suppressed or concealed its invention.
However, our case law establishes that “although § 102(g) prior art must be somehow made available to the public in order to defeat another patent, a § 102(g) prior inventor is under no obligation to file a patent application.” Apotex, 254 F.3d at 1039. Commercialization has been relied upon as another way to prove public disclosure. See e.g., Dow, 267 F.3d at 1343 (“Here, [the prior inventor’s] public disclosure of its ... invention occurred through commercialization.”); Checkpoint Sys. Inc. v. U.S. Int’l Trade Comm’n, 54 F.3d 756, 762 (Fed.Cir.1995) (“In cases in which an invention is disclosed to the public by commercialization.... ”). Filing a patent application and commercializing a product are only two convenient ways of proving an invention has been disclosed to the public. There are other ways to prove public disclosure including, e.g., the use of a printed publications as prior art under 35 U.S.C. § 102(a), (b).[4]
Fox claims that public use or descriptions in a published document must be enabling, given the policy and purpose of the patent system to enrich the art by disclosing how to make the invention. Fox quotes extensively from our case law to support its argument that the prior art must be enabling:
Early public disclosure is a linchpin of the patent system. As between a prior inventor who benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the process from the public, and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter.
W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1550 (Fed.Cir.1983) (citations omitted).
A principal purpose of § 102(g) is to ensure that a patent is awarded to a first inventor. However, it also encourages prompt public disclosure of an invention by penalizing the unexcused de *1307 lay or failure of a first inventor to share the benefit of the knowledge of the invention with the public after the invention has been completed.
Checkpoint Sys., 54 F.3d at 761 (citations omitted). Fox contends that the presentation and publication about the Kyoto Wafer are not enough to enable one skilled in the art to make the invention, because Cree never disclosed how it got its results.
As Fox effectively admits, all of the cases it cites to support its assertion that § 102(g) requires an enabling disclosure are process claims. The '130 patent is a patent directed to a product, a silicon wafer comprising SiC material with specific low defect densities, but Fox argues that any distinction between product and process claims is irrelevant. We disagree.
The purpose of § 102(g) is to bar an inventor from receiving a patent on an invention' that has already been invented and was not abandoned, suppressed, or concealed. Apotex, 254 F.3d at 1038-39. If the patent claimed a process, then a prior inventor would have to prove prior invention of the process which had not been abandoned, suppressed, or concealed, to invalidate the patent under § 102(g). “Cree promptly and publicly disclosed its findings concerning the low defect properties of the SiC material from which the [Kyoto Wafer] was cut through a presentation at the 1995 International Conference and a published paper on the subject.” Fox Group, 819 F.Supp.2d at 535. Accordingly, Cree promptly made its invention, a SiC material with low defect densities, known to the public. Fox has not produced sufficient evidence raising any genuine issues of material fact to show that Cree suppressed or concealed its invention.
Because Cree has produced clear and convincing evidence that it had the low density SiC crystal prior to Fox’s date of invention, and Fox has not produced sufficient evidence to show or raise genuine issues that Cree abandoned, suppressed, or concealed the invention, we find claims 1 and 19 of the T30 patent invalid under § 102(g)(2). Accordingly, we affirm the invalidity decision of the district court as to claims 1 and 19 of the T30 patent.
III. Invalidity of the Unasserted Claims
Cree sought summary judgment of invalidity with respect to all claims of the patents-in-suit. Upon a finding that claims 1 and 19 of the '130 patent were invalid under § 102(g), the district court granted Cree’s summary judgment motion on its counterclaim seeking a declaration that the entire '130 patent is invalid. On appeal, Fox asserts that there was no justiciable controversy to support Cree’s counterclaim for invalidity on the remaining claims of the '130 patent, and thus the district court’s order should be vacated with respect to those remaining claims.
In patent cases, “the existence of a case or controversy must be evaluated on a claim-by-claim basis.” Jervis B. Webb Co. v. So. Sys., Inc., 742 F.2d 1388, 1399 (Fed. Cir.1984) (citations omitted). “[Jjurisdiction must exist at all stages of review, not merely at the time the complaint [was] filed, ... a counterclaimant must show a continuing case or controversy with respect to withdrawn or otherwise unasserted claims.” Streck, Inc. v. Research & Diagnostic Sys., Inc., 665 F.3d 1269, 1282-83 (Fed.Cir.2012) (bracket in original) (quotations and citations omitted).
In Scanner Technologies the patent holder filed an infringement suit and the defendants counterclaimed seeking declaratory judgment on “each of the claims” of the two asserted patents. Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V., 528 F.3d 1365, 1383 (Fed.Cir.2008). This court *1308 upheld the district court’s judgment invalidating all of the claims because the parties had stipulated that the case was to be tried on one representative claim. Id. at 1383-84. In Streck, this court distinguished Scanner Technologies because in Scanner Technologies the “patentee never affirmatively disclaimed its allegations of infringement as to the other claims, here ... the patentee narrowed the scope of its claims at the start of litigation pursuant to the local patent rules and did so even further before any dispositive rulings by the court.” Streck, 665 F.3d at 1283.
Here, as in Streck, Fox’s Complaint alleged infringement of “one or more claims,” but Fox subsequently narrowed the scope of its asserted claims before the court ruled on the parties’ summary judgment motions. Id. at 1284. In its Complaint, Fox stated that Cree “practice[d] the invention of the '130 patent and, thus, infringe[d] one or more claims of the '130 patent.” JA4906. Cree argues that there was a continuing case or controversy with respect to the unasserted claims because in Fox’s responses to Cree’s first set of interrogatories, dated December 23, 2010, it asserted infringement of claims 1, 7, 13, and 19 of the '130 patent, and never assured Cree that it would not assert them. The district court stated Fox only alleged infringement of claims 1 and 19 of the '130 patent. Fox Group, 819 F.Supp.2d at 527. The district court further explained that although terms and phrases that were the subject of the claim construction order were also found in claims 7 and 13 of the '130 patent, “Fox has never indicated that Cree infringes those claims. Rather, Fox avers that Cree’s products contain a density of dislocations below 10,000, the dislocation threshold found only in claims 1 and 19.” Id. at 527 n. 5.[5]
Considering all of the circumstances discussed above we affirm the district court’s finding that only claims 1 and 19 of the '130 patent were asserted. However, “unlike the situation in Scanner Technologies, where all of the claims were at issue and were never withdrawn or altered by either party, here, both parties were on notice” that only claims 1 and 19 were at issue, and they knew which claims were at issue before the district court ruled on the parties’ summary judgment motions. Streck, 665 F.3d at 1284. There was no case or controversy with respect to the unasserted claims at the time of the summary judgment motions; therefore the district court did not have jurisdiction over the unasserted claims. Id. Accordingly, we vacate the district court’s declaration that the entire '130 patent is invalid,[6] but uphold the district court’s finding of invalidity of claims 1 and 19 under § 102(g). See id.; see also Dow, 267 F.3d at 1344 (finding only the claims at issue invalid under § 102(g)).
Conclusion
For the above mentioned reasons, we vacate the district court’s decision that the entire '130 patent is invalid, but uphold the *1309 district court’s finding of invalidity of claims 1 and 19 under § 102(g).
AFFIRMED-IN-PART AND VACATED-IN-PART

. Fox also filed suit against Dow Corning Corp. On October 25, 2010, the action against Dow Corning Corp. was transferred to the United States District Court for the Southern District of New York. Fox Group, Inc. v. Cree, Inc., 749 F.Supp.2d 410 (E.D.Va.2010).

. The '026 patent is no longer a subject of this litigation. See Fox Group, 819 F.Supp.2d at 527 n. 4.

. To show conception a prior "inventor must be able to 'describe his invention with particularity.’ [Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed.Cir. 1994).] This requires both (1) the idea of the invention's structure and (2) possession of an operative method of making it." Invitrogen Corp. v. Clontech Labs., Inc., 429 F.3d 1052, 1063 (Fed.Cir.2005). Cree would also meet the requirements of prior conception since it had an embodiment of the claimed product prior to Fox.

. In International Glass, our predecessor court held that the prior invention was deemed abandoned, suppressed, or concealed, because although Sciaronni’s personal notebook records were kept of his method for polishing gem stones, the records were never submitted to their employer's patent counsel or supervisory personnel for further evaluation, there was no evidence that the method was used by the company to make a finished product, the method was never described in any document or report, and no knowledge of the method was ever disseminated outside of the company. Int’l Glass Co., Inc. v. United States, 408 F.2d 395, 402-04 (Ct.Cl.1969). The court's analysis is instructive here because Cree took all of the steps the court mentioned Sciaronni had failed to take. In particular, Cree sent samples of its boule for testing by Dr. Dudley, an outside evaluator, the product itself (though not the process used to make it) was described in a published paper, and knowledge of the product was disseminated outside of the company in the Kyoto presentation.

. The district court supported its determination with the following: "See, e.g., Compl. ¶ 38 (referencing a chart ‘depicting that Cree is infringing at least claim 1 of the '130 patent.'); Fox’s Supplemental Br. In Opp. to Mot. for Summ. J. 2 n. 2, ECF No. 522 (claiming that Fox’s expert’s 'opinions establish that the surface of an axial region of each category of Cree's as-grown wafers ... has a density of dislocations of less than 104 per cm2'); id. at 5-6, 14; see also id. at 11 (‘The issue of infringement has narrowed to the density of dislocations limitation.’).” Fox Group, 819 F.Supp.2d at 527 n. 5.

. Because we uphold the district court’s determination of invalidity as to claims 1 and 19 of the '130 patent, this determination does not impact the district court’s dismissal of Fox’s claim for infringement of the '130 patent.