ROBERT G. DOUMAR, UNITED STATES DISTRICT JUDGE
This matter comes before the Court on a Motion to Dismiss ("Motion") filed by Defendant Tenant Turner, Inc. ("Defendant"). ECF No. 12. In such motion, Defendant asks the Court to dismiss the Complaint ("Complaint") filed by Consumer 2.0, Inc., d/b/a Rently ("Plaintiff") in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 1, 12. In its Complaint, Plaintiff alleges that Defendant has infringed one or more claims of United States Patent No. 9,875,590, entitled "Automated Entry" ("the '590 patent"). ECF No. 1 ¶ 9. The issue before the Court is whether the '590 patent claims patentable subject matter under 35 U.S.C. § 101. For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss as to the claims asserted in Plaintiff's Complaint and DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE . ECF No. 1.
I. BACKGROUND
A. PROCEDURAL HISTORY
On July 3, 2018, Plaintiff filed a Complaint against Defendant alleging patent infringement of the '590 patent, "Automated Entry." ECF No. 1. On August 7, 2018, Defendant filed the instant Motion to Dismiss along with its Memorandum in Support, to which Plaintiff filed its Response in Opposition ("Resp.") on August 28, 2018. ECF Nos. 12, 13, 16. Defendant filed its Reply to Plaintiff's Opposition on September 4, 2018 ("Reply"). ECF No. 17. The parties jointly filed a Motion for Oral Argument on September 6, 2018. ECF No. 18. The parties appeared before the Court for a hearing on this matter on October 15, 2018. ECF No. 20.
B. PATENT-IN-SUIT
Plaintiff alleges that Defendant infringes claims 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 of the '590 patent. ECF No. 1 ¶¶ 17 - 35. According to the '590 patent's description, the "system provides automated entry to a prospective buyer or renter of properties" and "automates the tour registration process," which "eliminates the need to arrange a tour with an agent or landlord" and "eliminates the need for an on-site representative of the property." '590 patent, ECF No. 1-1, Ex. 1 at 19. The patent identifies several entities that perform the patent's method: (1) a lockbox or automated *584 door lock, (2) a server, (3) an application interface, and (4) a portable device.
"[A] lockbox or similar locking device is placed at or near a property in order to enable an invited visitor to gain automated and unaccompanied entry into a specific property during a specified period of time." Resp., ECF No. 16 at 8. An "application collects information from the visitor's portable device about the visitor and his planned visit" and "[t]his information is relayed to a server." Id."The application provides the visitor with an invitation to receive automated entry information (e.g., a valid code)." Id. The application interface retrieves "automated entry information from coordinated server and lockbox database tables." Id. At this stage, a valid code is issued that "correlates with a specific period of time that a specific property may be visited by the invited visitor." Id. The application interface requests "identifying information through the invited visitor's portable device." Id. The valid code is then "communicated to the invited visitor's portable device via the application interface from the server." Id. at 8-9. "The lockbox or similar locking device" is then able to "be opened to facilitate the automated and unaccompanied entry" by the visitor. Id. at 9. "The application also tracks in real-time the identity of and time when a visitor actually visits a property." Id.
This process is described in Claim 7 of the patent, which is representative:
A method for providing automated entry to properties, comprising:
making properties available for viewing to invited visitors;
providing an application interface of an application running on a computing system to a property manager, the property manager being a manager, a listing agent or an owner of the property, the application interface prompting the property manager to enter a visitor name and contact information for a visitor, wherein upon receipt of the visitor name and contact information, the application provides the visitor with an invitation to receive automated entry information including code information that is valid during a specified period of time so that the visitor can enter a property by themselves, the invitation being delivered to the visitor electronically, the invitation being applicable only to the property and the invitation requesting identification from the visitor;
placing a lock box or an automated door lock at or near each property;
upon the application receiving and confirming identification information for the visitor, providing, by the application, automated entry information to the visitor that allows the visitor to enter the property, the automated entry information including code information that is valid during the specified period of time;
upon the visitor providing the code information to the lock box or the automated door lock at the property within the specified period of time, the lock box or the automated door lock opening to facilitate automated entry to the property;
tracking visitor activities at the properties; and
making information about the properties available within a user interface.
'590 patent, ECF No. 1-1, Ex. 1 at 23. Claim 7 is the only independent claim asserted in the Complaint. The dependent claims (8-16) build on this basic framework.
The patent-at-issue was initially rejected by the patent examiner as "directed to non-statutory subject matter because the claim(s) as a whole, considering all claim elements both individually and in combination, *585 d[id] not amount to significantly more than an abstract idea." ECF No. 13-1, Ex. 2 at 4. The patent examiner specifically stated that claims 1, 6, and 12, which Plaintiff notes later became representative Claim 7, were rejected because they were "directed to an abstract idea." Id.; Resp., ECF No. 16 at 18. In response to the initial rejection, Claim 12 was amended, in part, to include the addition of the steps of "placing a lock box or an automated door lock at or near the property" and such device "opening to facilitate automated entry to the property" in response to the "visitor providing code information to the lock box or automated door lock within the specified period of time." ECF No. 13-3, Ex. 3 at 3. The applicant also argued that these additions consisted of "physical (not abstract) action[s]". Resp., ECF No. 16 at 19 (citing ECF No. 16-3, Exhibit C at 2). Following these amendments, the patent examiner found that "[a]pplicant's response by virtue of amendment to claims has overcome the examiner's rejection under 35 U.S.C. § 101." ECF No. 13-4, Ex. 4 at 4.
II. STANDARD OF REVIEW
A defendant may move to dismiss a complaint under Rule 12(b)(6) on the grounds that it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). Such a motion should be granted if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (internal citation omitted). To survive a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief above a speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Where the claim is one of patent infringement, there must be "sufficient factual allegations and plausibility of those allegations" to survive a motion to dismiss. Bel IP LLC v. Boomerangit Inc., No. 2:11cv188, 2011 WL 13228482, at *5 (E.D. Va. Sept. 27, 2011).
In resolving a Rule 12(b)(6) motion, the court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the non-moving party. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). However, the court is not bound by the complaint's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Furthermore, the court may not consider any matters outside the pleadings, but it may consider written instruments that are attached as exhibits to a pleading, Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), as these exhibits are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Court may also take judicial notice of items in the public record, Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004), including patent and trademark registrations, Zinner v. Olenych, 108 F.Supp.3d 369, 377 n.2 (E.D. Va. 2015).
"A motion to dismiss for failure to state a claim upon which relief can be granted is not a procedural matter implicating unique issues of patent law, and thus the law of the Federal Circuit is not controlling." Taltwell, LLC v. Zonet USA Corp., No. 3:07cv543, 2007 WL 4562874, at *13 (E.D. Va. Dec. 20, 2007). Although the Fourth Circuit has yet to address the pleading standard for patent claims in light of Twombly and Iqbal, it is clear that a claim for patent infringement must, at a minimum, set forth "sufficient factual allegations and plausibility of those allegations" to survive a motion to dismiss.
*586 Bel IP, No. 2:11cv188, 2011 WL 13228482, at *5 (E.D. Va. Sept. 27, 2011).
Finally, patentability under section 101 is an issue of law that may be resolved on a Rule 12(b)(6) motion to dismiss. Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014). In determining eligibility, a court need not address each claim if the court can identify a representative claim and the "claims are substantially similar and linked to the same abstract idea." Id. at 1348 (internal quotation omitted).
III. ANALYSIS
The issue here is whether the claims at issue are eligible for patent protection. Section 101 of the Patent Act defines the subject matter eligible for patent protection, providing as follows:
Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.
35 U.S.C. § 101. However, the Supreme Court has "long held that this provision contains an important ... exception for" three categories that are not eligible for patent protection: "[l]aws of nature, natural phenomena, and abstract ideas." Alice Corp. Pty. v. CLS Bank Int'l, 573 U.S. 208, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014) (internal quotations removed). In Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 U.S. 66, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012), the Supreme Court "set forth a framework for distinguishing patents that claim" one of these patent-ineligible concepts "from those that claim patent-eligible applications of these concepts." Alice, 134 S.Ct. at 2355. In Alice, the Supreme Court reaffirmed this two-step framework. 134 S.Ct. at 2355.
The first step of Alice requires a determination by the Court as to "whether the claims at issue are directed to" one of the three patent-ineligible concepts (laws of nature, natural phenomena, or abstract ideas). 134 S.Ct. at 2355 (citing Mayo, 566 U.S. at 76-79, 132 S.Ct. 1289 ). If the Court determines that the claims are directed to an abstract idea, it proceeds to the second step, which requires the Court to consider "what else" is in the claims that may that would make them eligible for patent protection. Id. (internal quotations removed). To answer this question, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Id. (quoting Mayo, 566 U.S. at 77-79, 132 S.Ct. 1289 ). This second step is described by the Supreme Court as the search for an " 'inventive concept'-i.e. , an element or combination of elements that" ensures that the patent claims at issue amount to "significantly more" than claims upon an ineligible concept. Id. (quoting Mayo, 566 U.S. at 77, 132 S.Ct. 1289 ).
A. ALICE STEP ONE
Step one of Alice requires the Court to determine whether the asserted claims of the '590 patent describe a patent-ineligible concept: laws of nature, natural phenomena, or abstract ideas. Alice, 134 S.Ct. at 2355.[1] Here, Defendant argues *587 that the patent-at-issue is directed to an abstract idea. ECF No. 13 at 2. As noted in Alice, "[t]he abstract ideas category embodies 'the longstanding rule that [a]n idea of itself is not patentable." 134 S.Ct. at 2355 (internal quotations omitted).
"The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea.' " Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1334 (Fed. Cir. 2016). Although "[t]here have been somewhat contradictory points of emphasis in the opinions of the Supreme Court and Federal Circuit that address what constitutes an abstract idea," the Federal Circuit and Fourth Circuit have "looked to some important principles laid down by the Supreme Court in recent cases to decide what is an abstract idea." Asghari-Kamrani v. United Services Automobile Association, No. 2:15cv478, 2016 WL 3670804, at *3 (E.D. Va. July 5, 2016) (internal quotations omitted). For example, in Alice, the Court noted that "fundamental economic" and "longstanding commercial practice[s]" are "methods of organizing human activity" that are "within the realm of abstract ideas." Alice, 134 S.Ct. at 2356-57 (finding that claims directed to automating the use of a third party to mitigate settlement risk were abstract) (internal quotations omitted).
Following Alice's guidance, courts have found that claims which are primarily directed at "collecting, analyzing, and displaying data" as well as claims that "classify[ ] and stor[e] digital images in an organized matter" through the implementation of a server are abstract ideas. See SmarTEN LLC v. Samsung Electronics Am., Inc., 316 F.Supp.3d 913, 920-22 (E.D. Va. 2018) ; In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016). Claims encompassing the "idea of sending a request, receiving back a command, and executing a command to operate a device in a known and expected way" have also been found to be abstract. Chargepoint, Inc. v. SemaConnect, Inc., No. MJG-17-3717, 2018 WL 1471685, at *10-11 (D. Md. Mar. 23, 2018). The Federal Circuit also recently determined that a patent "directed to systems for locating, identifying and/or tracking of an object using" radio frequency identification components was "directed to an abstract idea." Automated Tracking Sols., LLC v. Coca-Cola Co., 723 F. App'x 989, 993 (Fed. Cir. 2018).
Importantly, the Federal Circuit has added a new consideration to the first step of the Alice analysis for claims involving computer-related technology. The purpose of this new consideration is to distinguish between claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" and claims that are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014) ; see also Enfish, 822 F.3d at 1335 (demonstrating that the Federal Circuit has begun to ask "whether the claims are directed to an improvement to computer technology versus being directed to an abstract idea, even at the first step of the Alice analysis."). "As Federal Circuit precedent makes clear, a claim is directed to the improvement of a device when it is focused on 'a specific improvement-[such as] a particular *588 database technique-in how computers c[an] carry out' a function, rather than on 'asserted advances in uses to which existing computer capabilities could be put.' " SmarTEN, 316 F.Supp.3d at 922 (quoting Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1354 (Fed. Cir. 2016) ).
The claims in Alice were directed to a "computerized scheme for mitigating 'settlement risk'-i.e. , the risk that only one party to an agreed-upon financial exchange will satisfy its obligation." 134 S.Ct. at 2352. The claims provided a solution to this problem, but one which the Court noted was "long prevalent in our" commercial system: "intermediated settlement, i.e. , the use of a third party to mitigate settlement risk." Id. at 2356 (internal quotations removed). The fact that a human third-party intermediary was no longer necessary because a computer performed part of this method was of no consequence to the Court. Instead, the Court highlighted that intermediated settlement was a longstanding "method of organizing human activity" as well as a "fundamental economic practice." Id. at 2356-57. As such, the patent claims were merely directed to an abstract idea.
Similarly, in Asghari, this Court found that an invention relating "to a system and method ... for centralized identification and authentication of users and their transactions to increase security in e-commerce" was a patent-ineligible, abstract idea. 2016 WL 3670804, at *1. This Court held that "despite the electronic setting and purportedly Internet-specific problem addressed, the patent claims [we]re directed to a common method for solving an old problem." Id. at *4. The claims at issue were merely "directed to the abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction." Id. Critical to the Court's decision was the fact that "[n]othing about the concept behind the patent claims depends upon their implementation by computers." Id. In fact, "the concept could easily be performed either by hand or, more simply, with technologies much older than computers." Id.
This Court finds that the claims at issue are directed to an abstract idea. Distilled to its essence, the claims use generic computing devices and techniques to provide automated entry to a property without human interaction. As Defendant notes, "[r]eal estate agents have used lockboxes to provide licensed real estate professionals access to properties for decades." ECF No. 13 at 9. The '590 patent simply automates that process using generic computer components such as a server, technology-enabled lock box/automated door lock, application interface, and mobile device. However, automation of a human, manual process is an abstract idea. See CalAmp Wireless Networks Corp. v. ORBCOMM, Inc., 233 F.Supp.3d 509, 513 (E.D. Va. 2017) (finding that automation of a process that "humans ha[d] been forever using" had no bearing on the court's analysis under Alice, regardless of the fact that it "had never before been automated"); Chargepoint, 2018 WL 1471685, at *7 ("mere automation of a manual process is ... an abstract idea"). Further, the fact that this process "had never before been automated" is entirely inconsequential. See CalAmp, 233 F.Supp.3d at 513. As such, much like the claims in Asghari, "despite the electronic setting ..., the patent claims are directed to a common method" (automation) "for solving an old problem" (the problem of how to provide an invited visitor entry to a property for a specified period of time). Asghari, 2016 WL 3670804, at *4.
The Court recognizes, however, that there are multiple elements comprising the representative claim, which result in the *589 process of automated entry. Following the Federal Circuit's warning to avoid analyzing and describing the claims at issue at "a high level of abstraction and untethered from the language of the claims," the Court has considered each of these elements. Enfish, 822 F.3d at 1337. Such consideration, however, results in the same conclusion: the elements are, considered both individually and as a combination, merely directed to abstract ideas.
Several of the elements are merely directed to the implementation of the abstract idea of providing automated entry and making properties available for viewing to invited visitors through generic computer components, such as an "application interface" and a "server." '590 patent, ECF No. 1-1, Ex. 1 at 23. For example, Claim 7 states that:
the application interface prompting the property manager to enter a visitor name and contact information for a visitor, wherein upon receipt of the visitor name and contact information, the application provides the visitor with an invitation to receive automated entry information including code information that is valid during a specified period of time so that the visitor can enter a property by themselves, the invitation being delivered to the visitor electronically, the invitation being applicable only to the property and the invitation requesting identification from the visitor
...
upon the application receiving and confirming identification information for the visitor, providing, by the application, automated entry information to the visitor that allows the visitor to enter the property, the automated entry information including code information that is valid during the specified period of time.
Id.
There is nothing in the language of these elements indicating that the claim at issue here is directed to any specific improvement in computer functionality or capabilities. The Federal Circuit was clear in Enfish that the proper question for the Court is "whether the focus of the claims is on the specific asserted improvement in computer capabilities ... or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." 822 F.3d at 1335-36 (internal quotations omitted). In Enfish, the claims at issue were directed to improving a computer's functionality, as they introduced "an innovative logical model for a computer database," using a single "self-referential table" to store data. Id. at 1331, 1335-36. Plaintiff asserts that "Claim 7 describes an improvement in the coordination and operation of a computer network server with a digital lockbox by coordinating the database tables of the server and digital lockbox to electronically provide automated entry information to an invited visitor that is valid for a specified period of time to facilitate access to a specific property." Resp., ECF No. 16 at 24. However, this assertion demonstrates that the claims at issue do not provide any improvement in computer functionality or capabilities, but rather, merely coordinate pre-existing and generic computer components to implement an abstract idea. The claims at issue "simply add[ ]" the coordination of these "conventional computer components" to a "well-known business practice." Enfish, 822 F.3d at 1338 (citing Alice, 134 S.Ct. at 2358-60 ).
Furthermore, Plaintiff's inclusion of tangible components such as the lockbox and mobile device does not prevent this Court from determining that the claims are directed to an abstract idea. See TLI Commc'ns, 823 F.3d at 611 ("the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract *590 idea"); Automated Tracking Solutions, LLC v. Coca-Cola Co., 223 F.Supp.3d 1278, 1289 (N.D. Ga. 2016) (finding that physical components such as a "transponder," "reader," and "antenna" simply "provide[d] an environment in which to carry out the abstract idea"), aff'd, 723 F. App'x 989 (Fed. Cir. 2018) (internal quotations removed).
Additionally, the element that provides for "upon the visitor providing the code information to the lock box or automated door lock ... the lock box or automated door lock opening to facilitate automated entry" is directed to an abstract idea. '590 patent, ECF No. 1-1, Ex. 1 at 23. In Chargepoint, the court clarified that claims amounting to merely "operating an existing device from a remote location over a network" do not constitute a "technological improvement" and are therefore, not patent-eligible. 2018 WL 1471685, at *11. Further, the fact that "the essence of the invention" at issue was "controlling the ... process remotely, as opposed to someone physically charging it" played a significant role in the court's determination that the claim encompassed a practice long prevalent in our system and was therefore, abstract. Id. at 9-11 (internal quotations removed).See also CalAmp, 233 F.Supp.3d at 513 (noting that automation of a process that "humans ha[d] forever been using" had no bearing on the court's analysis under Alice ). Similarly, this element of the '590 patent does not constitute a technological improvement, but merely removes the human component of a practice long prevalent in the real estate industry.
The fact that the claim includes an element of "tracking" also does not take the patent-at-issue out of the realm of abstract. See, e.g., CalAmp, 233 F.Supp.3d at 513 ; Automated Tracking, 723 F. App'x at 993. In CalAmp, the Court determined that a patent was abstract where, "[d]istilled to its essence," it claimed a system of "tracking an object by: (1) assessing the current location of the object; (2) obtaining the object's required location for the corresponding time; (3) determining whether the object is in the required location; and (4) requesting information in response to that determination." 233 F.Supp.3d at 512. The tracking component here is certainly no less abstract that the tracking at issue in CalAmp. Although the '590 patent contains a "tracking" element, this element is not defined anywhere in the '590 patent. As Plaintiff admitted at the hearing on the instant Motion, the only "tracking" this element provides is to "tell[ ] the system ... when a visitor went to a specific property and who that visitor was." See Hearing Transcript, ECF No. 21 at 32; see also Resp., ECF No. 16 at 2 ("[t]he application ... tracks in real-time the identity of and time when a visitor actually visits a property."). As such, Plaintiff's inclusion of this element is insufficient to create patent-eligibility.
Finally, the Court finds that the element of "making information about the properties available within a user interface" simply consists of collecting and displaying data, a process which Courts have consistently found to be abstract. '590 patent, ECF No. 1-1, Ex. 1 at 23; see SmarTEN, 316 F.Supp.3d at 920-22 ; Electric Power, 830 F.3d at 1353-54.
Furthermore, the mere combination of these abstract processes is insufficient to bring the patent-at-issue out of the realm of the abstract. Electric Power, 830 F.3d at 1354 (finding no inventive concept where the claims were "clearly focused on the combination of ... abstract-idea processes); CalAmp, 233 F.Supp.3d at 513 (finding that the patent-at-issue was directed to an abstract idea where the claims "focused on a combination of abstract-idea processes");
*591 Asghari, 2016 WL 3670804, at *4 (finding that combining the abstract ideas of "using of a third party intermediary and a random, time-sensitive code to confirm the identity of a participate to a transaction" was insufficient to "remove[ ] the patent claims from the realm of the abstract"); VOIT Technologies, LLC v. Del-Ton, Inc., No. 5:17-CV-259-BO, 2018 WL 385188, at *2 (E.D.N.C. Jan. 10, 2018) ("[T]he patent strings together a description of things that already existed, and calls that series of steps patent-eligible. It is not.").
For these reasons, the Court finds that the '590 patent as a whole is directed to the abstract idea of provided automated entry.
B. ALICE STEP TWO
Because the Court has determined that the '590 patent is merely an abstract idea, it must proceed to the second step of Alice. Step two is described as the "search for an 'inventive concept.' " Alice, 134 S.Ct. at 2355 (quoting Mayo, 566 U.S. at 72-73, 132 S.Ct. 1289 ). This step requires the Court to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" and " 'ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' " Alice, 134 S.Ct. at 2355 (quoting Mayo, 566 U.S. at 72-73, 78-79, 132 S.Ct. 1289 ). This step is satisfied if "the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." Berkheimer v. HP, Inc., 881 F.3d 1360, 1367 (Fed. Cir. 2018) (internal quotations omitted).
Plaintiff asserts that Claim 7 should "pass this test as containing a sufficient inventive concept" because "the coordinated server and lockbox with the application interface on a portable device represents a level of symbiotic operation that never previously existed." Resp., ECF No. 16 at 22. Plaintiff relies heavily upon BASCOM Global Internet Services, Inc. v. AT & T Mobility LLC in support of this position. 827 F.3d 1341 (Fed. Cir. 2016). After affirming the finding that "filtering content on the internet" was an abstract idea, the BASCOM court found that "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filter features specific to each end user" was nevertheless an inventive concept. BASCOM, 827 F.3d at 1348-50. As part of its analysis, the court noted that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." Id. at 1350. Therefore, the patent's description of "how its particular arrangement of elements [wa]s a technical improvement over prior art ways of filtering such content" satisfied the court's search for an inventive concept. Id.
The claims in BASCOM, however, "address[ed] a problem arising in the realm of computer networks, and provide[d] a solution entirely rooted in computer technology." 827 F.3d at 1346. Further, the claimed invention represented a "soft-ware-based invention[ ] that improve[s] the performance of the computer system itself" as well as "an existing technological process." Id. at 1351 (internal quotations omitted). As such, the BASCOM court found that the patent-at-issue claimed a "technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) to filter content on the Internet that overcomes existing problems with other Internet filtering systems." Id.
The claims at issue here are distinguishable from those in BASCOM as they do *592 not purport to improve the functionality of a computer or overcome existing technology-based problems. A comparison with Asghari is once again instructive. In Asghari, the steps of the representative claim were as follows: "(1) receiving electronically a request for a dynamic code for the user; (2) generating by the Central-Entity a dynamic code; (3) providing the generated dynamic code to the user; (4) receiving electronically by the Central-Entity a request for authenticating the user from a computer associated with the External-Entity; and (5) authenticating by the Central-Entity the user and providing the result to the External-Entity." Asghari, 2016 WL 3670804, at *5 (internal quotations omitted). This Court found that "[t]aken individually, each of these claim elements describe[d] conventional computer functions" and "[c]onsidered as an ordered combination, the claim elements d[ id] not add anything inventive to the abstract concept underlying them," nor did they "purport to improve the functioning of the computer itself." Id. (internal quotations omitted). Instead, they "simply instruct[ed] a generic computer or computers to verify the identity of a participant to a transaction using a randomly generated code." Id.
Similarly, in CalAmp, the court found that "the use of a remote database to save storage space on a tracking device [wa]s hardly an unconventional solution." CalAmp, 233 F.Supp.3d at 515. Although "previous tracking systems had not incorporated this particular arrangement of database records," "th[e] database structure had been used in other types of systems." Id. The court noted that "[l]ong before the filing of" the patent-at-issue, "computer systems had been configured in such a way to allow remote terminals to access information stored on a centralized database." Id. at 514.
Here, Plaintiff states that the patent-at-issue "contemplates an application providing automated entry ... by "invitation only" delivered electronically to the portable device of a specific visitor" after "collect[ing] information ... about the visitor and his planned visit," relaying this information to a server, and providing "the visitor with an invitation to receive automated entry information." ECF No. 16 at 8. "The lockbox or similar locking device may then be opened to facilitate the automated ... entry by the invited visitor." Id. at 9. The functions performed at each of these steps is purely "conventional" and "does no more than require [ ] generic computer" components to perform "generic computer functions." Asghari, 2016 WL 3670804, at *5 (quoting Alice, 134 S.Ct. at 2359 ). Although it may be true that previous systems had not incorporated this particular combination of generic components, before the filing of the patent-at-issue, computer systems had certainly been configured in such a way to allow a server to coordinate with automated access/entry programs as well as application interfaces on mobile devices. Distilled to their essence, these generic components are arranged in a conventional manner to execute the undoubtedly conventional functions of identity verification, time-sensitive code-generation, remote automated access, information collection and display, and the use of database tables.
Additionally, "[v]iewed as a whole, these method claims simply recite the concept of" automated entry to a property "as performed by a generic computer" or computers. Alice, 134 S.Ct. at 2359. As noted, there is nothing in the language of these elements indicating that the claim at issue here is directed to any specific improvement in computer functionality or capabilities. Therefore, the elements simply "do not add anything inventive to the abstract *593 concept underlying them." Asghari, 2016 WL 3670804, at *5.
For these reasons, the Court finds that the elements of the claim at issue, both individually and as an ordered combination, do not add anything inventive which would transform the claim into a patent-eligible concept.
C. THERE ARE NO FACTUAL QUESTIONS THAT PRECLUDE A FINDING OF PATENT INELIGIBILITY
Plaintiff argues that factual questions at issue in this case preclude a finding of patent ineligibility at the motion to dismiss stage. Resp., ECF No. 16 at 33. The Federal Circuit recently held that "whether a claim element or a combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact." Berkheimer v. HP, Inc., 881 F.3d 1360, 1368-70 (Fed. Cir. 2018). However, the court clarified that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry" and further noted that "[w]hen there is no genuine issue of material fact regarding whether the claim element or claim combination is well-understood, routine, [or] conventional ..., this issue can be decided ... as a matter of law." Id. at 1368. In Automated Tracking, the Federal Circuit affirmed the district court's granting of defendant's motion for judgment on the pleadings where the specification did not "support [Plaintiff's] contention that there is a factual dispute regarding whether the claims recite routine and conventional...components." 723 F. App'x at 995-96. See also TriPlay, Inc. v. WhatsApp, Inc., No. 13-1703-LPS-CJB, 2018 WL 1479027, at *6, 8-9 (D. Del. Mar. 27, 2018) (granting a motion to dismiss where it was not evident from the claims and specifications that there was "any inventive feature...used in an unconventional matter" and because the "gap in the specification [wa]s not filled by [Plaintiff's] pleadings.").
In BSG Tech LLC v. Buyseasons, Inc., the Federal Circuit clarified that it is not necessary to consider whether execution of an abstract idea "on a generic computer" is "well-understood, routine, and conventional." 899 F.3d 1281, 1290-91 (Fed. Cir. 2018). Instead, the proper analysis requires an assessment of whether "the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine, and conventional." Id. at 1290 (citing Alice, 134 S.Ct. at 2359-60 ).
The Court finds that there is no question of fact as to this issue. First, as discussed, the Court finds that it is not evident from the '590 patent specifications that there is any inventive feature used in an unconventional manner. Further, the Court finds nothing in the pleadings to fill this gap in the specifications. The Complaint alleges that "the '590 patent eliminated the need existing at the time for an on-site property management or real estate professional to be present in order for an invited visitor to gain physical access to the property" and that "prior to [Plaintiff's] invention, no other company in the field had reduced to practice the method and system set forth in the '590 Patent." ECF No. 1 ¶ 13. The only alleged unconventional features of Plaintiff's claims are that the "elements set forth in the '590 Patent both individually and in combination represent a novel approach for enabling an invited visitor to self-register and self-access a property" through the "coordination of operation of a server, technology-enabled lock box, application interface, and mobile device." Id.; Resp., ECF No. 16 at 24. However, "this simply restates what we have already determined is an abstract idea" and describes the implementation *594 of the abstract idea through conventional computer components. BSG Tech, 899 F.3d at 1291. Accordingly, the Court reiterates its determination that there is no inventive concept and finds that there are no factual issues precluding the Court from dismissing this matter without prejudice.
IV. CONCLUSION
For the above reasons, the Court holds that the asserted claims of the '590 patent at issue are invalid because they are directed to an abstract idea and thus ineligible for patent protection under 35 U.S.C. § 101. As such, Plaintiff fails to state a claim for relief. Accordingly, the Court GRANTS the Motion to Dismiss as to the claims asserted in the Complaint, ECF No. 12, and DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE , ECF No. 1.
The Clerk is DIRECTED to forward a copy of this Opinion and Order to all Counsel of Record.
IT IS SO ORDERED .

The Court limits the scope of this ruling to the claims asserted and set forth in Plaintiff's Complaint. The Court does not have jurisdiction to rule on unasserted claims. See Fox Group, Inc. v. Cree, Inc., 700 F.3d 1300, 1308 (Fed. Cir. 2012) ("There was no case or controversy with respect to the unasserted claims ...; therefore the district court did not have jurisdiction over the unasserted claims."). As Defendant notes, "Claim 7 of the '590 Patent... is the sole asserted independent claim." ECF No. 13 at 11. Therefore, this Opinion and Order only applies to the asserted claims.